UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KIMORAH PARKER, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | No. 3:19-cv-939 (SRU) |
| | : | |
| CORRIGAN-RADGOWSKI DOC STAFF, | : | |
|     Defendants. | : | |

## INITIAL REVIEW ORDER

On June 18, 2019, Kimorah Parker, an inmate currently confined at the MacDougall-Walker Correctional Institution in Suffield, Connecticut, brought a complaint *pro se* and *in forma pauperis* under 42 U.S.C. § 1983 against seven Connecticut Department of Correction ("DOC") officials: Warden Stephen Faucher, Lieutenant Muzykoski, Correction Officer Yaqle, Lieutenant Cronin, Captain Diloretto, Correction Officer Witherspoon, and Correction Officer Miser. Compl., Doc. No. 1. Parker seeks damages against the defendants in their individual capacities for violating her[1] constitutional rights while she was confined as a pretrial detainee[2] at Corrigan-Radgowski Correctional Center in Uncasville, Connecticut. *See id.* at 6. For the following reasons, the complaint is dismissed in part.

I. Standard of Review

Under 28 U.S.C. § 1915A, I must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief.

---

[1] Although confined in a male facility, Parker asserts that she is a transgender inmate.
[2] State judicial records and the DOC website show that Parker was sentenced on May 20, 2019 to three years of incarceration for assault in the second degree. *State v. Parker*, No. H15N-CR18-0292216-S (Conn. Super. Ct. May 20, 2019); Inmate Information, CONNECTICUT DEPARTMENT OF CORRECTION, www.ctinmateinfo.state.ct.us/detailsu-pv.asp?id_num=357229.

28 U.S.C. § 1915A. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "[p]ro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

II. <u>Factual Allegations</u>

Parker alleges the following facts. On August 17, 2018, at approximately 12:00 p.m., Officer Yaqle denied Parker a shaving razor. Compl. ¶ 1. This caused Parker to suffer "an emotional and mental health breakdown." *Id.* at ¶ 2. She asked to speak with someone from the mental health unit, covered her cell window, and then sat down in the corner of her cell. *Id.* A short time later, Yaqle told Parker that the mental health unit had been called, and Parker removed the window covering. *Id.*

Later, Lieutenant Muzykoski, Officer Witherspoon, and Officer Miser entered Parker's cell and told her that she was being sent to a restrictive housing unit ("RHU"). Compl. ¶ 3. Parker stood in the back of the cell and explained to the officers that she was emotionally distraught. *Id.* Muzykoski told Parker that they "will talk about it later" and then instructed Witherspoon and Miser to handcuff her. *Id.* at ¶ 4. Parker told the officers that she needed female staff members to handcuff her because she was a transgender inmate, but the officers

2

pushed her against the wall and proceeded to handcuff her. *Id.* Muzykoski then deployed chemical mace on Parker and said that she was resisting, which was false. *Id.* The officers then escorted her out of the cell. *Id.* at ¶ 5. Due to her anxiety and depression, Parker could not walk, which prompted the officers to carry her down the stairs. *Id.*

When they reached the RHU, Parker stood against the wall outside the unit and once again tried to explain her situation to the camera operator, but she only "s[u]nk deeper into [her] pani[c] attack and fear." Compl. ¶ 5. Witherspoon and Miser then placed her in a wheelchair. *Id.* at ¶ 6. Although her feet were still touching the ground, the officers spun the wheelchair around, which caused her to feel as if she was falling backwards. *Id.* Out of fear for her safety, Parker stood up out of the wheelchair but was otherwise compliant. *Id.* Witherspoon then "slamm[ed]" Parker onto the floor, causing Parker to injure her head, and then placed his knee on her neck, restricting her ability to breathe. *Id.* at ¶ 7. Muzykoski then sprayed mace on her a second time. *Id.* Parker said that she was unable to breathe, and the officers told her to stop resisting, even though Parker was compliant. *Id.* at ¶ 8.

The officers escorted Parker to the medical unit where they placed her on suicide watch. Compl. ¶ 9. There, Parker informed medical personnel that she was suffering from headaches and neck pain. *Id.* She also spoke with Warden Faucher about the incident. *Id.* Faucher said that he had seen the surveillance footage from the RHU unit and would look into the incident, but he never conducted any investigation. *Id.*

After she was placed in the RHU, Parker continued to endure headaches and neck pain. Compl. ¶ 10. She spoke with Lieutenant Cronin and Captain Diloretto about what had occurred. *Id.* Both officials stated that they would investigate the incident and instructed Parker to write a statement about it, but the officials "found nothing." *Id.*

III. Analysis

Parker is suing the defendants for subjecting her to "excessive force, deliberate indifference, reckless disregard, unnecessary force, cruel and unusual punishment, target[ed] discrimination, ment[a]l distress, and emotional distress." Compl. at 6. Based on the allegations and the fact that Parker was a pretrial detainee at the time of the events, I construe her complaint as asserting claims of excessive force and a violation of equal protection under the Fourteenth Amendment and a state law claim of intentional infliction of emotional distress.

A. Excessive Force

"A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eighth Amendment . . . because 'pretrial detainees have not been convicted of a crime and thus may not be punished in any manner – neither cruelly and unusually nor otherwise.'" *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (citations omitted) (quoting *Iqbal v. Hasty*, 490 F.3d 143, 168 (2d Cir. 2007)); *see also Shakir v. Derby Police Department*, 284 F. Supp. 3d 165, 205 (D. Conn. 2018) (analyzing claim challenging conditions of confinement during pretrial detention under Fourteenth Amendment Due Process Clause). "A detainee's rights are 'at least as great as the Eighth Amendment protections available to a convicted prisoner.'" *Darnell*, 849 F.3d at 29 (quoting *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)).

In order to state an excessive force claim under the Fourteenth Amendment, the detainee "'must show only that the force purposely or knowingly used against h[er] was objectively unreasonable.'" *Fletcher v. City of New London*, 2018 WL 4604306, at *10 (D. Conn. Sept. 25, 2018) (quoting *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015)). "'[O]bjective

4

reasonableness turns on the facts and circumstances of each particular case.'" *Id.* (quoting *Kingsley*, 135 S. Ct. at 2473). In *Kingsley*, the United States Supreme Court identified several relevant factors a district court may consider in determining the reasonableness or unreasonableness of the force used:

> [T]he relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Kingsley*, 135 S. Ct. at 2473. The court "must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with 20/20 vision of hindsight." *Id.*

Construing the allegations liberally, I conclude that Parker has stated a plausible excessive force claim against Witherspoon, Miser, and Muzykoski. She alleges that those officers pushed her against the wall, sprayed her with mace, "slamm[ed]" her onto the ground, and caused her head and neck pain, even though she was compliant with their demands. I will, therefore, permit the excessive force claim to proceed against those defendants at this time.

Parker appears to be suing Faucher, Cronin, and Diloretto based on their failure to investigate or seek corrective action after learning about the incidents on August 17, 2018. *See* Compl. ¶¶ 9-10. "It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [section] 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). A plaintiff who sues a supervisory official for monetary damages must allege that the official was "personally involved" in the constitutional deprivation in one of five ways: (1) the official directly participated in the deprivation; (2) the official learned about the deprivation through a report or appeal and failed to remedy the wrong; (3) the

5

official created or perpetuated a policy or custom under which unconstitutional practices occurred; (4) the official was grossly negligent in managing subordinates who caused the unlawful condition or event; or (5) the official failed to take action in response to information regarding the unconstitutional conduct. *Id.* Because Parker alleges that she informed Faucher, Cronin, and Diloretto about the use of force incident, and none of them took any corrective or investigative action in response, I will permit the excessive force claim to proceed against those supervisory defendants at this time.

Parker has not, however, alleged sufficient facts showing Yaqle's personal involvement in the incidents. The only facts against Yaqle are that he denied Parker a shaving razor and that he called the mental health unit after Parker explained that she was in distress. *See* Compl. ¶¶ 1-2. Those facts do not sufficiently state a claim for excessive force or unconstitutional conditions of confinement. Thus, the claims against Yaqle are dismissed.

B. Equal Protection

"The Equal Protection Clause . . . commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). "To state an equal protection claim, a plaintiff must allege facts showing that: (1) [s]he was treated differently from similarly situated individuals and (2) that the difference in or discriminatory treatment was based on 'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Trowell v. Theodarakis*, 2018 WL 3233140, at *3 (D. Conn. July 2, 2018) (*quoting Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000)). A plaintiff may also state a Fourteenth

Amendment equal protection claim under the "class of one" theory by showing that she was "intentionally treated differently from others similarly situated and that there [was] no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Parker alleges that the defendants "discriminated against [her] due to [her] gender identity." Compl. ¶ 1. That claim is entirely conclusory. The allegations do not show that the forced used upon her, or the failure to investigate the use of such force, was the result of discrimination under the Fourteenth Amendment. Parker has not alleged facts showing that she was treated differently than any other inmate. Therefore, to the extent she is attempting to state a claim under the Equal Protection Clause, her claim is dismissed.

    C. <u>Intentional Infliction of Emotional Distress</u>

In addition to constitutional claims, Parker appears to be asserting a state law claim of intentional infliction of emotional distress. *See* Compl. at 6. I can exercise supplemental jurisdiction over a state law claim if:

> (1) there is a claim arising under the federal constitution or federal laws; (2) the relationship between the federal claim and the state claim permits the conclusion that the entire action comprises but one constitutional case; (3) the federal claim has substance sufficient to confer subject matter jurisdiction on the court; and (4) the state and federal claims derive from a common nucleus of operative fact.

*Miller v. Lovett*, 879 F.2d 1066, 1071 (2d Cir. 1989), *abrogated on other grounds*, *Graham v. Connor*, 490 U.S. 386 (1989); *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).

In order to assert a claim for intentional infliction of emotional distress, a plaintiff must establish four elements: "(1) that the actor intended to inflict emotional distress; or that he knew or should have known that the emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the

7

plaintiff's distress; and (4) that the distress suffered by the plaintiff was severe." *Miner v. Town of Cheshire*, 126 F. Supp. 2d 184, 194 (D. Conn. 2000) (quoting *Petyan v. Ellis*, 200 Conn. 243, 253 (1986)); *see also Cavuoto v. Oxford Health Plans, Inc.*, 2000 WL 888263 at *8 (D. Conn. June 22, 2000); *DeLaurentis v. New Haven*, 220 Conn. 225, 266-67 (1991). To be held liable, the defendant's conduct must be "so extreme and outrageous that it goes beyond all possible bounds of decency, is regarded as atrocious, is utterly intolerable in a civilized society, and is of a nature that is especially calculated to cause, and does cause, mental distress of a very serious kind." *Miner*, 126 F. Supp. 2d at 194.

Although I agree that Parker has alleged facts showing that the force used upon her was excessive, the alleged conduct is not "extreme and outrageous" nor calculated to cause mental distress. The allegations show that the defendants' conduct was motivated by their perception that Parker was resisting their attempts to restrain her. They do not support a finding that the defendants intended to cause Parker mental distress or disregarded a risk of causing such harm. Therefore, the state law claim of intentional infliction of emotional distress is dismissed.

D. Motion for Appointment of Counsel

In addition to her complaint, Parker filed a motion for the appointment of counsel to represent her in this action. Mot. for Appointment of Counsel, Doc. No. 3. "District courts exercise substantial discretion in deciding whether to appoint counsel . . . ." *Ferrelli v. River Manor Health Care Center*, 323 F.3d 196, 204 (2d Cir. 2003). The Second Circuit has cautioned against the "routine appointment of counsel." *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 173-74 (2d Cir. 1989). Before appointment is even considered, the indigent movant must establish that she is unable to obtain counsel. *Id.* at 173; *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986). If the movant satisfies that threshold requirement, I must then consider the merits of her

claims and determine whether her position "seems likely to be of substance." *Hodge*, 802 F.2d at 61. If so, I should then consider other factors bearing on the need for appointment of counsel, including the movant's ability to investigate the factual issues of the case, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the movant's apparent ability to present the case, and the complexity of the legal issues involved. *Id.* at 61-62. Because the record in this case consists solely of a complaint, I cannot determine at this stage whether Parker's claims are sufficiently meritorious to warrant the appointment of *pro bono* counsel. Thus, the motion is denied without prejudice subject to refiling at a later stage of litigation.

## ORDERS

(1) The clerk is directed to remove "Corrigan-Radgowski DOC Staff" as a defendant to this action and add as defendants Warden Faucher, Lieutenant Muzykoski, Lieutenant Cronin, Captain Diloretto, Officer Witherspoon, and Officer Miser. Parker is hereby advised that any amended complaint must contain the names of all defendants in the case caption pursuant to Federal Rule of Civil Procedure 10.

(2) The Fourteenth Amendment excessive force claim may proceed against Witherspoon, Miser, Muzykoski, Faucher, Cronin, and Dioletto in their individual capacities for damages. All other claims are dismissed.

(3) The clerk shall verify the current work addresses for Witherspoon, Miser, Muzykoski, Faucher, Cronin, and Dioletto with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint to them at the confirmed addresses within **twenty-one (21) days** of this order, and report on the status of the waiver requests on the **thirty-fifth (35) day** after mailing. If any defendant fails to return the waiver request, the clerk shall

9

make arrangements for in-person service by the U.S. Marshals Service on him/her, and he/she shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(4) The clerk shall mail a courtesy copy of the complaint and this order to the DOC Office of Legal Affairs.

(5) The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

(6) Discovery, pursuant to Fed. R. Civ. P. 26-37, shall be completed within **six months (180 days)** from the date of this order. Discovery requests need not be filed with the court.

(7) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to the parties by the court. The order can also be found at http://ctd.uscourts.gov/district-connecticut-public-standing-orders.

(8) All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this order.

(9) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(10) If Parker changes her address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that she MUST notify the court. Failure to do so can result in the dismissal of the case. Parker must give notice of a new address even if she is incarcerated.

She should write "PLEASE NOTE MY NEW ADDRESS" on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.

      (11)    The motion for appointment of counsel, Doc. No. 3, is DENIED without prejudice subject to refiling at a later stage of litigation.

      So ordered.

Dated at Bridgeport, Connecticut, this 9th day of August 2019.

                            /s/ STEFAN R. UNDERHILL
                            Stefan R. Underhill
                            United States District Judge